**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| SPIRIT MONKEY, LLC., | § | |
|     Plaintiff, | § | Case. No. 5:17-cv-458 |
| v. | § | |
| | § | |
| POSITIVE PROMOTIONS, INC. | § | |
| | § | DEMAND FOR JURY TRIAL |
|     Defendant. | § | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

Plaintiff, Spirit Monkey, LLC., by and through its undersigned counsel, hereby sues Defendant, Positive Promotions, Inc., and in support, alleges and avers the following:

<u>**NATURE OF THE LAWSUIT**</u>

1.  This is a civil action to (i) temporarily and permanently enjoin acts of the following: patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., and an action for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S. §1125(a), unfair competition, , and dilution under the common law and the law of the State of Texas, §16.103 of the Texas Business & Commerce Code;  and (ii) recover damages, profits, treble damages or profits, attorneys' fees, and costs.

2.  This case involves Defendant's continued production, promotion, and sale of designs owned by Plaintiff, who is the assignee and owner of the right, title, and interest; U.S. Patent No. 9,196,174 B2 ("the 174 patent"), titled "Embroidered Sticks".

3.  Defendant has infringed Plaintiff's patent rights developed and used by Plaintiff. Defendant has also attempted to unfairly compete through the intentional and unauthorized use of Plaintiff's patented designs. Finally, Defendant has infringed and diluted the trademarks that make Spirit Monkey's products immediately identifiable and unique.

## PARTIES

4.     Plaintiff, Spirit Monkey, LLC. (hereafter referred to as "Spirit Monkey"), is a corporation organized under the laws of the State of Texas.

5.     Spirit Monkey's only and principle place of business is at 20658 Stone Oak Parkway, Suite 105, San Antonio, Texas 78258.

6.     Defendant Positive Promotions, Inc. is a corporation organized under the laws of the State of New York, having an office and place of business at 15 Gilpin Avenue, Hauppauge, New York 11788 (hereinafter "Positive Promotions" or "Defendant"). Defendant can be served by delivery of the complaint to the Secretary of State of Texas for mailing to its home office at 15 Gilpin Avenue, Hauppauge, NY 11788.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1338(a), Section 39 of the Lanham Act, 15 U.S.C. § 1121, Chapter 85 of the Judiciary and Judicial Procedure Code, and has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

8.     The amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. Accordingly, this Court has jurisdiction pursuant also to 28 U.S.C. § 1332.

9.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c), (d) and/or 1400(b).

10.     Defendant is subject to this Court's general and specific personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute. Defendant has purposefully availed

2

itself of the privileges of conducting business in the State of Texas and in this District thereby creating sufficient minimum contacts within the State of Texas and this District.

11.     Defendant conducts business in this District, the claims alleged in this Complaint arise in this District, and the acts of infringement and unfair competition have taken place and are continuing to take place in this District.

12.     Defendant also conducts business through its website which is and interactive online store and has an online store listing over 19 infringing items at http://www.positivepromotions.com.

13.     Positive Promotions actively and regularly conducts business in the State of Texas and the Western District of Texas through its business called POSITIVE PROMOTIONS.

14.     Defendant regularly markets and sells infringing products in the state of Texas and in this District.

15.     CPS® is a national group purchasing leader in the group purchasing products and services industry.

16.     CPS® is has negotiated a national contract with Positive Promotions for all the activities department needs for group purchases to actively promote Defendant's products in Texas.

17.     Defendant exhibits, markets, and sells products at trade shows in Texas.

18.     Defendant actively markets, sells and offers to sell products and services throughout the United States, including the Western District of Texas.

19.     Defendant introduces products and services into the stream of commerce that incorporate infringing technology knowing that they would be sold in this judicial district and elsewhere in the United States.

20.     Defendant regularly and actively conducts business in the state of Texas but has not qualified with the Texas Secretary of State to do business in Texas.

21.     Defendant actively and regularly solicits and conducts business and has sold infringing products in the state of Texas and the Western District of Texas, but has not designated or maintained a Texas resident agent for service of process.

22.     Therefore, Defendant may be served with process by delivering a copy of the complaint to the Texas Secretary of State for mailing to Positive Promotions, Inc. at 15 Gilpin Avenue, Hauppauge, New York 11788.

## FACTUAL ALLEGATIONS

### A.     SPIRIT MONKEY AND ITS INTELLECTUAL PROPERTY

23.     Spirit Monkey was founded in 2011 by Lisa deBonoPaula, a mother of two daughters and two sons.

24.     Spirit Monkey, LLC. conducts its business in accordance with Christian values and strive to maintain a friendly, fair, and creative work environment that encourages ingenuity, diligence, dignity, and respect of everyone.

25.     Spirit Monkey designs, creates, and sells several products that fulfill its mission.

26.     Mrs. deBonoPaula created Spirit Monkey, LLC. and its products to provide improved ways to enrich the educational experience for young people by recognizing and rewarding student participation, good behavior, personal and academic achievements, volunteer efforts and other commendable growth the teachers and/or administrators may wish to incentivize in the student body or organization.

27.     Plaintiff, Spirit Monkey, is dedicated to enriching the academic experience of school children by providing high-quality products that reward their achievements and promote participation in the learning environment.

28.     One such product is Spirit Sticks®, which are small, embroidered, generally rectangular patches that students can earn, collect, and display on a Spirit Ring™, lanyard, or key ring.

29.     Spirit Sticks® promote school spirit and encourage both extrinsic and intrinsic motivation for students to perform at their best by providing meaningful rewards that have lasting value throughout and beyond the school year.

30.     Spirit Monkey also designs, creates, and sells Spirit Rings™, which are custom-embroidered keychains on which students display their Spirit Sticks®. Spirit Rings™ can be readily attached to backpacks, lunch boxes, instrument cases, jackets, and more.

31.     In the years since their creation, Spirit Sticks® have received enormous praise from students, parents, teachers, school administrators, and have enjoyed significant commercial success.

32.     Spirit Sticks® have achieved a huge financial success attributable to their unique patented design, structure, and features.

33.     On November 24, 2015, U.S. Patent No. 9,196,174 B2 ("the 174 patent"), titled "Embroidered Sticks," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '174 patent is attached as Exhibit A.

34.     The invention of the '174 patent relates to embroidered articles, particularly for use as rewards or incentives for school age children.

5

35.     The field of the invention also relates to embroidered articles to reward activity, promote certain messages and/or behaviors in various environments and contexts, such as the workplace, school, political and/or public awareness campaigns, consumer, or business environments and contexts.

36.     Spirit Monkey is the assignee and owner of the right, title, and interest in and to the '174 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of the '174 patent.

37.     Spirit Monkey has also protected its business by federally registering its trademarks.

38.     Spirit Monkey has registered the mark SPIRIT MONKEY® on the Principal Register of the United States Patent and Trademark Office.  *See* Exhibit B.

39.     This registration is valid and subsisting.

40.     Spirit Monkey owns the federally registered trademark SPIRIT MONKEY®.

41.     A true and correct copy of the federal trademark registration for SPIRIT MONKEY® is attached as Exhibit B.

42.     Spirit Monkey has also registered the mark SPIRIT STICKS® on the Principal Register of the United States Patent and Trademark Office.  *See* Exhibit C.

43.     This registration is valid and subsisting.

44.     Spirit Monkey owns the federally registered trademark SPIRIT STICKS®.

45.     A true and correct copy of the federal trademark registration for SPIRIT STICKS® is attached as Exhibit C.

**B.      DEFENDANT'S INFRINGING AND ILLEGAL ACTIONS**

46.     Defendant offers products confusingly similar to, and in certain instances copied from and identical to, Spirit Monkey's Spirit Sticks®.

47.     Defendant makes and sells a knock-off product called Positive Patches (herein referred to as "Positive Patches")

48.     Defendant's Positive Patches are offered for sale on the following website:

49.     A true and correct copy of the website is attached as Exhibit D.

50.     Defendant did not offer its Positive Patches product for sale until long after Spirit Monkey's Spirit Sticks® became a commercial success.

51.     Several of Defendant's Positive Patches products are near-identical copies of Spirit Monkey's successful Spirit Sticks®.

52.     For example, in approximately March 2014, Spirit Monkey, LLC created a Spirit Stick® containing the text "ACADEMIC SUCCESS" using a red and yellow color combination.

53.     Shortly after the "ACADEMIC SUCCESS" Spirit Stick® entered commerce, Defendant created and began to sell a near-identical Positive Patch product.

54.     A side-by-side comparison illustrates the copying by Defendant's Positive Patch product form Spirit Monkey's Spirit Stick®:

SPIRIT MONKEY ORIGINAL ARTWORK                    POSITIVIE PROMOTIONS PATCH



7

55.     A side-by-sided comparison illustrates the copying Defendant's PatchTag product from Spirit Monkey's Spirit Stick®:

SPIRIT MONKEY ORIGINAL ARTWORK                    POSITIVIE PROMOTIONS PATCH

SPIRIT MONKEY ORIGINAL ARTWORK                    POSITIVIE PROMOTIONS PATCH
























56.    Although Defendant substantially copied Spirit Monkey's Spirit Sticks®, no trade name or trademark of Defendant's is affixed to the Positive Patches product when it is given to the recipient or end user.

57.    Leaving off any identification enabled the substitution of Defendant's products for Spirit Monkey's products without the end user knowing about the passing off and substitution.

58.    Spirit Monkey's products are well known in the marketplace by students because it was the first company selling its Spirit Stick® products and was a commercial success by selling tens of millions of items and generating tens of millions of dollars in revenue.

59.    Both Spirit Monkey and Defendant sell their products primarily to schools and the schools give the products to students who would show them to parents, friends and relatives.

60.    Defendant began selling its products to the same market knowing that they would reach the same recipients.

61.    These same recipients will assume an association between the products of Spirit Monkey, LLC and products of Defendant.

62.    Defendants actions are intended to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by the recipient.

63.    Defendant contributed to post-sale confusion or downstream confusion.

64.    Defendant actively induced post-sale confusion or downstream confusion.

65.    Defendant has contributed to confusion between Plaintiff's Spirit Sticks® and Defendant's Productive Patches amongst the recipients of their products.

66.     Defendant has actively induced confusion between Plaintiff's Spirit Sticks® and Defendant's Positive Patches amongst the recipients of their products.

67.     Defendant's actions have caused confusion in the minds of persons able to influence purchasing decisions or persons whose confusion presents a significant risk to the sales, goodwill, or reputation of Spirit Monkey.

68.     Defendant's actions have caused confusion on the part of potential consumers.

69.     Defendant's actions have caused confusion of non-consumers whose confusion could create an inference that consumers are likely to be confused.

70.     Defendant's actions have caused confusion of non-consumers whose confusion could influence consumers.

## COUNT I - INFRINGEMENT OF U.S. PATENT NO. 9,196,174 B2

71.     Spirit Monkey incorporates by reference the allegations of the foregoing paragraphs as though fully set forth herein.

72.     Defendant has and continues to infringe at least claims 1-4 of the '174 patent by making, using, selling, importing, and/or providing and causing to be used an embroidered fabric stick that satisfies the elements of those claims.

73.     In particular, claim 1 of the '174 patent recites "[a]n embroidered fabric stick that is embroidered with a phrase, word, icon or artwork, for attaching to and displaying on an article, wherein the embroidered stick comprises a reinforced hole positioned close to one of the ends of the embroidered stick for attaching one of its ends to the article, wherein the embroidered stick is substantially rectangular in shape and is from about 1.75 inches to about 4.5 inches in length and about 0.3 inches to about 1.0 inches in width, wherein the embroidered stick comprises a laser-cut, satin stitch border."

11

74.     Defendant infringes claim 1 of the '174 patent by making, using, selling, importing, and/or providing and causing to be used Defendant's Positive Patches products.

75.     Defendant's Positive Patches are offered for sale on the following website: http://www.positivepromotions.com. *See* Exhibit D.

76.     Defendant' Positive Patches products meet each of the limitations recited in claim 1.

77.     Defendant's Positive Patches product is an embroidered fabric stick that is embroidered with a phrase, word, icon or artwork.

78.     The Positive Patches product is configured for attaching to and displaying on an article.

79.     The Positive Patches product contains a reinforced hole positioned close to one of the ends of the stick for attaching one of its ends to the article.

80.     The Positive Patches product is substantially rectangular and is about 2 inches in length and about 0.5 inches in width.

81.     The Positive Patches product contains a laser-cut, satin stitch border.

82.     "Laser cut" is a term of art to those skilled in the art of embroidery and means that the products are cut with a hot knife. *See* Exhibit E.

83.     Cutting with a hot knife is commonly known as and often referred to as "laser cut" in the field of embroidery products. *See id.*

84.     The purpose of the laser cut technique is to melt the threads into a solid edge that won't fray. *See id.*

85.     Defendant infringes claim 2 of the '174 patent by making, using, selling, importing, and/or providing and causing to be used Defendant's Positive Patches products.

86.     Claim 2 of the '174 patent recites: "The embroidered stick of claim 1, wherein the embroidered stick comprises embroidery, said embroidery being selected from the group consisting of polyester, nylon, rayon, cotton and metallic threads sewn on the fabric."

87.     Defendant's Positive Patches product contains embroidery that is one of polyester, nylon, rayon, cotton and metallic threads sewn on the fabric.

88.     Defendant infringes claim 3 of the '174 patent by making, using, selling, importing, and/or providing and causing to be used Defendant's Positive Patches products.

89.     Claim 3 of the '174 patent recites: "The embroidered stick of claim 1, wherein the fabric is selected from the group consisting of denim, cotton, polyester, felt, twill, and wool."

90.     Defendant's Positive Patch goods contain fabric that is denim, cotton, polyester, felt, twill, or wool.

91.     Defendant infringes claim 4 of the '174 patent by making, using, selling, importing, and/or providing and causing to be used Defendant's Positive Patches products.

92.     Claim 4 of the '174 patent recites: "The embroidered stick of claim 1, wherein the embroidered stick is 100% fully embroidered on twill."

93.     Certain of Defendant's Positive Patch goods are embroidered sticks that are 100% fully embroidered on twill.

94.     The infringing Positive Patch goods are used, marketed, provided to, and/or used by or for Defendant' partners, clients, and customers across the country and in this District.

95.     Since at least as early as December 17, 2015, Defendant's infringement of the '174 patent has been willful.

96.     Spirit Monkey has been significantly harmed by Defendant's infringing activities.

**COUNT II - FEDERAL FALSE DESIGNATION OF ORIGIN OR SOURCE**

97.    Spirit Monkey incorporates by reference the allegations of the foregoing paragraphs as though fully set forth herein.

98.    Spirit Monkey's SPIRIT STICKS® mark is distinctive and indicates to consumers that its embroidered tags and its services originate from a single source.

99.    Spirit Monkey's SPIRIT STICKS® mark on its products and services symbolize the substantial goodwill of Spirit Monkey resulting in significant sales of its high-quality embroidered tags and services.

100.    Spirit Monkey's SPIRIT MONKEY® mark is distinctive and indicates to consumers that its embroidered tags and its services originate from a single source.

101.    Spirit Monkey's SPIRIT MONKEY® mark on its products and services symbolize the substantial goodwill of Spirit Monkey resulting in significant sales of its high-quality embroidered tags and services.

102.    Defendant's false designations of origin or source are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by recipients of Defendant's goods or services.

103.    Defendant's use in commerce of false designations of origin or source is likely to cause consumers to believe that Defendant's and Spirit Monkey's goods or services come from the same origin or source, or that Spirit Monkey sponsors or approves the goods or services of Defendant, or that Defendant and Spirit Monkey are somehow affiliated, connected, or associated with one another when in fact they are not.

104.    Defendant's use in commerce of false designations of origin or source has injured, and continues to injure, the goodwill of Spirit Monkey.

105.    The actions of Defendant constitute a violation of the federal Lanham Act, 15 U.S.C. § 1125.

106.    Defendant deliberately and intentionally copied distinctive visual elements that are incorporated into the Spirit Sticks® products, including, but not limited to, color combinations, the character and design of the embroidered sticks, the brightly-colored trim of the embroidered sticks, the texture of the embroidered sticks, the slogans and designs imprinted on the sticks, and the font style used for the text of the embroidered sticks.

107.    By duplicating the total image and overall appearance of the SPIRIT STICKS ® products, Defendant has caused confusion among customers of Spirit Monkey and Defendant.

108.    At no time has Spirit Monkey authorized Defendant to create, distribute, sell, offer for sale, use, or otherwise put into commerce Defendant's Positive Patch goods without identification of their source to the end user.

109.    Defendant is knowingly and intentionally misrepresenting and falsely designating to the public an affiliation, connection, association, origin, source, endorsement, sponsorship, and approval of Defendant's Positive Patch goods to create a likelihood of confusion by the public as to the affiliation, connection, association, origin, source endorsement, sponsorship, and/or approval of Defendant's products.

110.    Spirit Monkey's SPIRIT STICKS® mark is inherently distinctive or has acquired distinction within the meaning of the Lanham Act.

111.    Spirit Monkey's SPIRIT MONKEY® mark is inherently distinctive or has acquired distinction within the meaning of the Lanham Act.

15

112.     Pursuant to 15 U.S.C. § 1116, Spirit Monkey is entitled to preliminary and permanent injunctive relief to prevent Defendant's continuing use of false designations of origin or source.

113.     Defendant's false designations of origin or source have irreparably injured Spirit Monkey's goodwill and eroded Spirit Monkey's share of market, and unless enjoined by this Court, will continue to do so.

114.     Pursuant to 15 U.S.C. § 1117, Spirit Monkey is entitled to damages for Defendant's violations, an accounting of profits made by Defendant on sales of its goods or services, and recovery of Spirit Monkey's costs of this action.

115.     Defendant has willfully and wantonly used false designations of origin or source, and its actions have been calculated to confuse, mislead, or deceive consumers, and to injure the goodwill of Spirit Monkey.

116.     The intentional engaging in false designation of origin or source by Defendant makes this an exceptional case entitling Spirit Monkey to an award of three times its actual damages and recovery of its reasonable attorneys' fees.

### COUNT III - COMMON LAW UNFAIR COMPETITION

117.     Spirit Monkey incorporates by reference the allegations of the foregoing paragraphs as though fully set forth herein.

118.     Defendant's acts are calculated to deceive the relevant consuming public into accepting and purchasing Defendant's products in the mistaken belief that they are Spirit Monkey's products, or that that they are sponsored by, connected with, or supplied under the supervision of Spirit Monkey.

119.    Such actions permit, and will continue to permit, Defendant to use and benefit from the goodwill and reputation earned by Spirit Monkey to readily obtain customer acceptance of the goods offered for sale, and to give Defendant's goods a salability they would not otherwise have, all at Spirit Monkey's expense.

120.    Defendant' aforementioned acts constitute unfair competition in violation of the common law of the State of Texas.

121.    As a direct and proximate result of Defendant's above-described conduct, Spirit Monkey has suffered and will continue to suffer damages in an amount that is not presently ascertainable, but will be established at trial.

122.    Unless enjoined by this Court, Defendant's above-described conduct will cause irreparable injury, for which Spirit Monkey has no adequate remedy at law, injury to the reputation and good will of Spirit Monkey as well as confusion and deception among consumers.

123.    Defendant's acts complained of herein have been and are grossly negligent, deliberate, willful, intentional, in bad faith, malicious, with full knowledge and conscious disregard of Spirit Monkey's rights, intended to cause confusion, and to trade off the good will in Spirit Monkey's SPIRIT STICK mark, thus making this an exceptional case and entitling Spirit Monkey to enhanced damages and attorneys' fees, at least as provided under Texas Civil Practices & Remedies Code § 41.003.

## COUNT IV - COMMON LAW PALMING OFF

124.    Spirit Monkey incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

125.    Defendant has engaged in direct palming off and passing off, contributory palming off and passing off and inducing palming and passing off its goods and services as originating or sponsored by Spirit Monkey, in violation of the common laws of the State of Texas.

126.    Defendant's acts of palming off and passing off entitle Spirit Monkey to recover its damages and costs of this action, together with an accounting of profits made by Defendant.

127.    Defendant's palming off and passing off its goods or services as originating or sponsored by Spirit Monkey has been intentional and malicious and calculated to injure Spirit Monkey and with knowledge of Spirit Monkey's prior rights.

128.    The willful, wanton and malicious nature of Defendant's conduct entitles Spirit Monkey to an award of its reasonable attorney's fees and punitive damages.

129.    Defendant's palming off and passing off its goods or services as originating or sponsored by Spirit Monkey is irreparably injuring Spirit Monkey's goodwill and eroding Spirit Monkey's share of the market; and unless enjoined by this Court, Defendant will continue to do so.

130.    Further, Spirit Monkey may not have an adequate legal remedy in the event money damages cannot properly be calculated.

131.    Under the common law of the State of Texas, Spirit Monkey is entitled to preliminary and permanent injunctive relief to prevent Defendant from continuing to palm off and pass off its goods and services and the goods and services of Spirit Monkey, LLC.

## **COUNT V - DILUTION IN VIOLATION OF TEX. BUS. & COM. CODE § 16.103**

132.    Spirit Monkey incorporates by reference the allegations of the foregoing paragraphs as though fully set forth herein.

133. Based on the activities described above, Defendant has diluted and continue to dilute the distinctiveness of the Spirit Monkey's SPIRIT STICKS® mark and Spirit Monkey's SPIRIT MONKEY® mark under §16.103 of the Texas Business & Commerce Code.

134. Plaintiff's SPIRIT STICKS® mark and Spirit Monkey's SPIRIT MONKEY® mark have become widely recognized throughout the state of Texas, or throughout a geographic area within the state of Texas, as a designation of the source of Plaintiff's goods and services and is therefore famous as defined by Tex. Bus. & Com. Code § 16.103.

135. Plaintiff's SPIRIT STICKS® mark and Spirit Monkey's SPIRIT MONKEY® mark are inherently distinctive, or has at least acquired distinctiveness through continuous, widespread use.

136. Defendant's acts complained of above are likely to injure Spirit Monkey's business reputation or to dilute the famous, distinctive quality of Spirit Monkey's SPIRIT STICKS® mark and Spirit Monkey's SPIRIT MONKEY® mark  by, at the very least: (i) eroding the public's exclusive identification of Spirit Monkey's famous SPIRIT STICKS® mark and Spirit Monkey's SPIRIT MONKEY® mark, (ii) lessening the capacity of Spirit Monkey's famous SPIRIT STICKS® mark and Spirit Monkey's SPIRIT MONKEY® mark to identify and distinguish Spirit Monkey's goods and services, (iii) associating Spirit Monkey's SPIRIT STICKS® mark and Spirit Monkey's SPIRIT MONKEY® mark with products and/or services of inferior quality, and (iv) by impairing the distinctiveness of Spirit Monkey's famous SPIRIT STICKS® mark and Spirit Monkey's SPIRIT MONKEY® mark .

137. Defendant's unauthorized activities are likely to weaken or otherwise jeopardize Spirit Monkey's highly valuable rights.

138.     Pursuant to Texas Business & Commerce Code § 16.103, Spirit Monkey is entitled to bring this action to enjoin Defendant from further injuring Spirit Monkey's business reputation or diluting the distinctive quality of the Spirit Monkey's SPIRIT STICKS® mark and Spirit Monkey's SPIRIT MONKEY® mark.

139.     Spirit Monkey will be irreparably injured unless such action is enjoined by this Court as provided by Texas law.

140.     Defendant's' dilution has been willful and intentional, making this case eligible for an award of enhanced profits and damages under Texas law, as well as an award of Spirit Monkey's attorneys' fees.

## JURY DEMAND

141.     Plaintiff demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for itself and against Defendant as follows:

A.     An adjudication that Defendant have infringed the '174 patent;

B.     an award of damages to be paid by Defendant adequate to compensate Plaintiff for Defendant's past infringement of the '174 patent, and any continuing or future infringement through the date such judgment is entered, including pre-judgment and post-judgment interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.     a declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiff's reasonable attorneys' fees;

D.      a permanent injunction against Defendant, their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with any of them, restraining them from infringing Plaintiff's patent;

E.      enter an injunction prohibiting Defendant and its respective officers, directors, agents, servants, employees, related companies, licensees, and all persons acting for, with, by, though, and under any of them, from any and all false designations of origin or source and Defendant's dilution, false advertising, unfair competition and palming off or any derivation thereof directly or indirectly, for itself, or through, on behalf of, or in conjunction with the sale or offer of any products or services by Defendant;

F.      enter judgment in favor of Plaintiff for actual damages in an amount to be determined by the Court, where such damages are trebled due to Defendant's willful and intentional disregard of Plaintiff's known rights, pursuant to at least 15 U.S.C. § 1117 and Texas Business & Commerce Code §§ 16.102-16.104;

G.      enter judgment in favor of Plaintiff for Defendant's profits in an amount to be determined by the Court, where such profits are trebled due to Defendant's acts of willful and intentional disregard and violation of Plaintiff's known rights, pursuant to at least 15 U.S.C.§ 1117 and Texas Business & Commerce Code §§ 16.102-16.104 and common law;

H.      award Plaintiff all costs of the action and reasonable attorneys' fees pursuant to the provisions of at least 15 U.S.C. § 1117 and Texas Business & Commerce Code §§ 16.102-16.104;

I.      Defendant be ordered to file with this Court and to serve upon Plaintiff, within thirty (30) days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant have complied with the injunctions;

J.      Plaintiff recover all damages it has sustained because of Defendant's activities, and that said damages be trebled;

K.      an accounting be directed to determine Defendant's profits resulting from the activities complained of herein, and that such profits be paid over to Plaintiff, increased as the Court finds to be just under the circumstances of the case;

L.      Plaintiff recover its costs of this action and prejudgment and post-judgment interest; and

M.      an award to Plaintiff of such further relief at law or in equity as the Court deems appropriate, just and proper.

DATED this 19th day of May, 2017.

Respectfully submitted,

_____
Charles W. Hanor
Texas Bar No. 08928800
Hanor Law Firm, PC
750 Rittiman Road
San Antonio, TX  78209
(210) 829-2002 Phone
(210) 829-2001 Fax
chanor@hanor.com

ATTORNEYS FOR PLAINTIFF